**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**ALLISON MACDOUGALL**,

    Plaintiff

v.

**BANNER HEALTH**,

    Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff, Allison MacDougall and for her Complaint against the Defendant, Banner Health, alleges the following:

## I. <u>INTRODUCTION</u>

1.    Allison MacDougall, a woman of Hispanic ethnicity and Mexican ancestry was employed by Banner Health, last as a Patient Financial Services Representative. The clinic where Ms. MacDougall worked had a culture of racial and ethnic hostility, particularly about Hispanic and people described as "Mexican." Throughout Ms. MacDougall's employment, she was the target of and subjected to slurs and jokes about her race and national origin. Defendant discriminated against Ms. MacDougall by subjecting her to disparate treatment, up to and including pay and leading to constructive discharge. Ms. MacDougall brings this proceeding for

damages to redress violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

## II. JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 to enforce the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

## III. VENUE

3. The unlawful employment actions described below were committed in the state of Colorado. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

5. On or about September 11, 2019, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue.

6. This action was commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## V. PARTIES

7. Plaintiff Allison MacDougall is a resident of Colorado who was employed by Banner Health as a Patient Financial Services Representative. Plaintiff worked in Banner Health's Health Clinic located at 2010 16th Street in Greeley, Colorado, which concentrates specifically in gastroenterology.

8. Banner Health is an Arizona non-profit corporation conducting business in the State of Colorado.

## VI. GENERAL ALLEGATIONS

9. Paragraphs 1 through 8 are incorporated herein.

10. Plaintiff is of Hispanic racial background and ethnicity.

11. Plaintiff's national origin is Mexican.

12. Plaintiff was hired by Defendant on April 20, 2015.

13. Plaintiff was first hired to work part-time as an administrative assistant, then hired for a full-time position in Defendant's gastroenterology clinic in Greeley, Colorado as a Patient Financial Services Representative.

14. Throughout her employment, Plaintiff performed the duties of her position satisfactorily.

15. Plaintiff was well-liked by patients, staff, and liaisons outside of the clinic. Plaintiff received positive feedback from physicians and people she assisted in the office.

16. The clinic where Plaintiff worked was very busy with long wait times to be seen by a physician. Patients calling for appointments had already received a referral from their primary physician.

17. The majority of patients seen by the clinic were Hispanic and/or primarily Spanish-speakers.

18. During Plaintiff's employment with Defendant, Plaintiff was subjected to ongoing comments and offensive conduct relating to her race, Hispanic, as well as her national origin of Mexican ancestry.

19. The clinic where Plaintiff worked had a culture of racial and ethnic insensitivity. Plaintiff's supervisor and senior employees made, encouraged, or acquiesced in various hostile comments.

20. The clinic atmosphere was so hostile toward Hispanics and people of Mexican heritage that one employee refused to reveal she even spoke Spanish or was of Mexican descent to avoid harassing comments.

21. Plaintiff was subjected to offensive, negative, and hostile remarks about Hispanics and people generally referred to as "Mexican" or "Mexicans."

22. Employees in the clinic made comments to and around Plaintiff about Mexicans being lazy and not wanting to work. A registered nurse expressed her opinion to Plaintiff that "Mexican" patients, especially those using Medicaid, were "the worst." Some clinic employees commented that Hispanic and Mexican patients using Medicaid were a drain on society. Similar comments were not made of the white patients who used Medicaid benefits to obtain services at the clinic.

23. This registered nurse stated openly that she was voting for Donald Trump because he would build a wall and "get rid of them all." She also commented that another Hispanic employee in the office only got married so that she could stay in the country "legally," and accused that Hispanic employee of not being in the country legally.

24. Plaintiff, who is fluent in Spanish, was frequently asked by physicians to explain procedures, preparation, or follow up care to Spanish-speaking patients. Plaintiff's supervisor knew that physicians sought Plaintiff out to assist with Spanish-speaking patients.

25. Plaintiff's supervisor, Lindsey Maxwell, admonished Plaintiff in writing for assisting patients in Spanish. Ms. Maxwell knew that physicians asked for Plaintiff's assistance with Spanish-speaking patients but gave her a written warning for doing so anyway.

26. Clinic managers and supervisors refused to permit Plaintiff to become a certified Spanish interpreter for the office despite physician requests and Plaintiff having already taken necessary steps to become Banner Health-certified. All that needed to be done was to get authorization from Plaintiff's supervisor to take the training offered by Banner Health, but Ms. Maxwell would not authorize it.

27. The clinic had a phone line that patients whose primary language was not English could use for interpreter services. This was called within the clinic as the "Hola line." The Hola line for Spanish-speakers never worked in the clinic, and despite requests by Plaintiff and physicians to get it repaired, Defendant and/or supervisors in the clinic never bothered to have it in working order.

28. Plaintiff also received a lower rate of pay than white, non-Hispanic employees for the same work. Other Hispanic and Latino employees received lower rates of pay for the same position.

29. Plaintiff was tasked with training new employees for the same position she held yet earned $2.00 less per hour than white, non-Hispanic employees.

30. Plaintiff's supervisor and her supervisor's manager (also the clinic's manager) witnessed the treatment of Hispanic employees, offensive comments toward Hispanics and Mexicans, and treatment of Plaintiff by white employees in the clinic. Defendant did not take corrective or disciplinary action to remedy the hostile and severe offensive conduct.

31. Plaintiff also witnessed and reported the conduct of clinic employees who refused to add Spanish-speaking patients to the schedule before adding white, primarily English-speaking patients, even if those Spanish-speaking patients called first to make an appointment.

32. Hispanic patients were given lower priority for appointments than white, non-Hispanic patients. On one occasion, a family member of a Hispanic patient called Plaintiff to inform the clinic that her father had died as a result of not being given a timely appointment despite a referral. Plaintiff witnessed Defendant's security personnel escort a Hispanic patient out of the clinic when the patient exhibited signs of severe medical distress.

33. Plaintiff and other employees complained to Plaintiff's supervisor, other clinic managers, and human resources representatives in detail about the treatment of Hispanic patients and employees in the clinic.

34. Plaintiff also made reports to Banner Health via its comply line, both confidentially and using her name, to seek assistance with discriminatory conduct in the workplace and the severe and pervasive hostile work environment.

35. Other Banner Health employees contacted the comply line on Plaintiff's behalf to report disparate treatment and the hostile work environment in the clinic toward Hispanic employees and those employees of Mexican origin or ancestry.

36. Defendant did not address Plaintiff's complaints or the complaints of other employees who identified themselves as Hispanic or of Mexican origin.

37. Defendant retaliated against Plaintiff for her complaints of discriminatory conduct and a hostile work environment by receiving a disproportionately heavier workload, accounting

for Plaintiff's time worked differently than white employees, and adding additional duties to Plaintiff's workload not typical of patient financial services representatives.

38. Plaintiff's supervisor reduced Plaintiff's pay for attending an employee's office birthday celebration in the lunchroom, but Plaintiff's supervisor did not do so for white employees. Plaintiff told her supervisor that she would rather call Spanish-speaking patients back who were waiting for appointments instead of attending the birthday celebration, but Plaintiff's supervisor requested that she attend.  Ms. Maxwell told Plaintiff that Plaintiff was not a "team player." Plaintiff's supervisor reduced Plaintiff's pay for attending the birthday celebration anyway.

39. Banner Health's management and administration permitted a culture of animus toward Hispanics, and non-white and/or foreign-born individuals.

40. Because of Defendant's and its employees' conduct toward Plaintiff and other Hispanic and/or Mexican-born employees and patients, Plaintiff suffered extreme emotional distress and was placed on medical leave at the direction of her treating physicians.  Plaintiff was replaced in her position and was ultimately constructively discharged.

## VII.  FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1981—Hostile Work Environment)

41. Plaintiff realleges all prior paragraphs and incorporates them herein.

42. Title 42 U.S.C. § 1981 provides in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . . (b) For

purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

43. Plaintiff is a non-white Hispanic woman and is thus a member of a protected class under 42 U.S.C. § 1981.

44. Defendant discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 1981 by engaging in, tolerating, or failing to prevent the race-based harassment alleged above and by failing to take affirmative action to correct and redress these unlawful employment practices.

45. Defendant has denied Plaintiff the protections against race discrimination provided by 42 U.S.C. § 1981 in the terms and conditions of her employment.

46. Defendant discriminated against Plaintiff in the making or enforcement of its contracts with her, wholly or in part, because of her race.

47. During Plaintiff's employment, Defendant subjected Plaintiff to offensive and unwelcome comments based on Plaintiff's race.

48. During Plaintiff's employment, Defendant tolerated offensive and unwelcome comments based on Plaintiff's race made by others, and by their own actions, encouraged those offensive and unwelcome comments.

49. Plaintiff clearly indicated that the conduct was unwelcome by reporting it to her supervisor, human resources, and through Banner Health's comply line. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

50. This conduct and other incidents of harassment described above were because of Plaintiff's race and national origin.

51. The conduct suffered by Plaintiff was sufficiently pervasive or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

52. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

53. The harassment directed at Plaintiff was either intended to cause her emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to Defendants' conduct.

54. Defendants' conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Plaintiff.

## VIII.  SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1981— Race Discrimination)

55. Plaintiff realleges all prior paragraphs and incorporates them herein.

56. Plaintiff is a non-white Hispanic woman and is thus a member of protected class under 42 U.S.C. § 1981.

57. Plaintiff was at all times qualified to perform her job duties and performed them satisfactorily.

58. Defendant has denied Plaintiff the protections against race discrimination and retaliation provided by Section 1981 in the terms and conditions of her employment and in discharging her wholly or in part based upon her race.

59. Defendant, at least by and through the conduct of their employees, discriminated against Plaintiff in the making or enforcement of their contracts with her, wholly or in part, because of her race.

60. Defendant is liable for the intentional acts and omissions of their agents and employees.

61. Defendant's conduct was willful, wanton and in reckless disregard of Plaintiff's federally protected rights, and was the proximate cause of significant injuries, damages and losses incurred by Plaintiff.

## IX.  THIRD CLAIM FOR RELIEF
### (Race/National Origin Discrimination—Title VII—42 U.S.C. § 2000e-2)

62. Plaintiff realleges all prior paragraphs and incorporates them herein.

63. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

64. As a Hispanic-American woman of Mexican ancestry, Plaintiff is a member of protected classes under Title VII of the Civil Rights Act of 1964, as amended.

65. Defendant treated Plaintiff less favorably than her similarly situated counterparts who are not Hispanic-American and/or Hispanic.

66. Plaintiff was subjected to adverse treatment in the terms and conditions of her employment because of her race and/or national origin, including but not limited to lost employment opportunities and discriminatory terms and conditions of employment as described above.

67. At all pertinent times, Plaintiff performed the functions of her job competently and was more qualified for the position she held than other newly-hired employees.

68. Despite Plaintiff's qualifications, Defendant subjected her to discrimination because of her race and/or national origin.

69. Defendant's asserted reasons for the employment actions Plaintiff suffered were pretext for illegal race discrimination.

70. Plaintiff's race was a motivating factor in Defendant's discrimination against her.

71. Because of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

## X. FOURTH CLAIM FOR RELIEF
### (Hostile Work Environment—Title VII—42 U.S.C. § 2000e-2)

72. Plaintiff realleges all prior paragraphs and incorporates them herein.

73. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

74. Defendant discriminated against Plaintiff because of her race and/or national origin in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the race- and/or national origin-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

75. During her employment, Plaintiff was subjected to numerous offensive and unwelcome comments and actions about her race/national origin, including comments and acts by the high-ranking employees and supervisors in the office.

76. Defendant allowed hostile comments and conduct to continue that targeted Plaintiff, fellow employees, and patients on the basis of their race and national origins.

77. Defendant allowed an abusive and hostile work environment based on race and national origin discrimination.

78. Plaintiff and other employees clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

79. This conduct described above and other incidents of harassment described above were because of Plaintiff's race and/or national origin.

80. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

81. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

82. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. Economic damages, including back pay;

b. Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

c. Punitive damages for claims as allowed by law;

d. Nominal damages;

e. Injunctive relief;

f. A declaration that Defendants' conduct violated Plaintiff's rights under 42 U.S.C. § 1981;

g. Pre- and post- judgment interest at the highest statutory rate;

h. Costs and attorneys' fees; and

i. All other legal or equitable relief the court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues triable by jury.

Respectfully submitted this 9th day of December, 2019.

> Law Office of Gretchen E. Lipman, LLC
>
> GRETCHEN E. LIPMAN
> s/ Gretchen E. Lipman
> 1776 S. Jackson St., Ste. 710
> Denver, CO 80210
> (303) 861-3022
> GRETCHEN@LIPMANLAWCOLORADO.COM
> *Attorney for Plaintiff*

Plaintiff's Address:
1530 S. Haymaker Drive
Milliken, CO 80543